HARLEM SAVINGS BANK, Plaintiff, *v.* FAYE COOPER et al., Defendants.

Supreme Court, Special Term, Bronx County, December 12, 1950.

*Charles S. Fettretch* for plaintiff.

*Stuart Edward Levison* for Faye Cooper and another, defendants.

HAMMER, J. This is a motion by the plaintiff for an order directing the Sheriff of Bronx County to remove the defendants husband and wife and their property, together with their sub-tenant, from the premises formerly owned by defendants Cooper, and to let plaintiff into possession thereof.

Plaintiff is the mortgagee of the premises and the subsequent purchaser of the property at the foreclosure sale. Defendants Cooper are in possession of a store on the ground floor and of an apartment on the second floor of the premises. The codefendant Zajac rents a portion of the store from defendants Cooper.

It appears from the report of the Referee in foreclosure filed herein June 20, 1950, that defendants were in arrears of payment of the sum of $7,925 for principal of bond and mortgage and of interest thereon from December 15, 1949, to June 16, 1950, amounting to the sum of $159.38. The amount computed by the Referee as due for principal and interest at the date of his report is the sum of $8,074.08.

The moving papers further show that the defendants Cooper have been collecting rent from the defendant Zajac; that the foreclosure sale took place on August 25, 1950; that judgment of foreclosure and sale was duly entered on July 26, 1950, and contained a provision that: " adjudged that the purchaser or

purchasers at such sale be let into possession of said premises on production of the Referee's deed.''

Pursuant to said judgment the premises were purchased at the foreclosure sale by plaintiff for the sum of $6,000, that being the highest sum bid therefor. On August 25, 1950, the Referee executed and delivered to plaintiff a deed to the premises, which deed was recorded in the office of the Register on August 30, 1950. The Referee's report of sale has been filed and shows a deficiency of $2,975.73 due plaintiff. Demand was made by plaintiff of defendants that they remove and vacate the premises, and at the time of the demand a certified copy of the judgment of foreclosure and sale was duly served and said Referee's deed was duly and personally exhibited to the defendants. They, however, still remain in possession against the will of the landlord, and without any payment for rent or use and occupation. The landlord has not consented that the defendants remain and would refuse consent if sought and any payment if offered.

Under the Business and Commercial Rent Laws a tenant is defined as '' a lessee, sublessee, licensee or other person entitled to the possession or to the use or occupancy of the whole or part of '' any business or commercial space. (L. 1945, ch. 314, § 2, subd. [e], as amd.; L. 1945, ch. 3, § 2, subd. [i], as amd.) Prior to the enactment of the emergency rent control laws, an owner of mortgaged premises was not permitted to remain in possession, use or occupancy of the mortgaged premises after the same had been sold pursuant to a judgment of foreclosure and sale duly entered against him, based upon his default in payment of principal and interest and the Referee's deed of the property had been delivered. The possession of the owner of foreclosed premises under the circumstances here present in my opinion is not within the protection of the emergency statutes. If such an owner defendant had been a tenant and had failed to pay the rent when due, he could have been removed in summary proceedings, and would not have been within the protection of the emergency statutes. I do not think that there is a more favorable situation arising on the failure to pay principal and interest due on mortgaged premises than on the failure to pay rent. As the protection of the emergency statutes is not afforded or applicable in the latter case of nonpayment of rent, I do not see how it can be logically given without clear express provision therefor in the former. In each instance there has been a default in the payment required for continued possession or occupancy. It seems clear that where a mortgagor

in possession has defaulted in payment of principal and interest on his mortgage he can be in no stronger position than a tenant who has defaulted in the payment of his rent.

Defendants contend that plaintiff, in order to evict them, must apply to the housing commission for a certificate of eviction and cannot proceed by way of a writ of assistance; that they are tenants within the meaning of the emergency statute. Defendants rely upon the following cases as authority for their position: *Da Costa* v. *Hamilton Republican Club* (187 Misc. 865); *Lawyers Trust Co.* v. *Kelly* (191 Misc. 590); *East Riv. Sav. Bank* v. *Flame Realty Corp.* (67 N. Y. S. 2d 440); *Presprop Corp.* v. *Riveredge Holding Corp.* (73 N. Y. S. 2d 808). After a careful consideration of these cases, I find I am not in accord with the views expressed therein in respect of mortgagor owners in possession and I am constrained to disagree with them insofar as they hold such mortgagors are tenants under the emergency rent control laws.

I do not find that the defendants Cooper here are tenants, lessees, sublessees, licensees or other persons entitled to the possession or to the use or occupancy of the whole or part of the property. At no time after plaintiff acquired title does it appear that the parties herein established any relationship of landlord and tenant, nor did they agree on any rental arrangement.

The distinction between a mortgage and a tenancy, and between the relationship of mortgagor and mortgagee and landlord and tenant, is so marked that in the absence of clear, express language of inclusion in the emergency rent control statutes the owner mortgagor should not receive the protection of such legislation by judicial construction. The distinction seems to me to require exclusion. The emergency rent control laws did not in express language extend any protective provision to an occupancy of property under such a lender-borrower, mortgagee-mortgagor relationship, or affect any relief or remedy theretofore available to the mortgagee. The mortgage moratorium laws were in effect up to July 1, 1949 (L. 1948, ch. 413), and were designed to act as a defensive shield to protect owners from exploitation by holders of mortgages. Rent control laws affecting commercial and business space in New York City were enacted in 1945 (L. 1945, chs. 3, 314, 315) and have to do with the prevention of inflation and the exaction, by reason of the space shortage emergency, of unfair, unreasonable and excessive rents from the tenants or similar included occupants of the various proscribed premises. Possession or

occupancy was incidentally protected (*Woods* v. *Durr*, 170 F. 2d 976).

In 1950, when the State Commercial Rent Law was enacted (L. 1950, ch. 327, eff. March 31, 1950, amdg. L. 1945, ch. 3, as amd.), the mortgage moratorium laws had lapsed. With full knowledge of the existing mortgage moratorium laws and that unless extended they would lapse on July 1, 1949, the Legislature in enacting the various emergency rent control laws neverthe-less made no reference thereto or to mortgagor owners in possession or occupation of mortgaged premises. This was not an oversight; it can only be regarded as an exclusion. Natural sympathy led to the often-repeated statement that the primary purpose of rent control laws was to protect tenants in their occupancy. But it has never been suggested that the landlord or owner should be deprived of his property or his right to possession to protect a tenant who did not pay the obligated rent. It would seem to be not more than an expression of sym-pathy to say that the mortgagee who has invoked the court's action of foreclosure and sale is not to be given what he has thereby obtained to satisfy the mortgage indebtedness because to put the mortgagee in possession of the estate thus obtained it would be necessary to oust the mortgagor. Such a mortgagor is not ousted from possession by the mortgagee, but has ousted himself of his right to possession by not paying his mortgage obligation. Foreclosure of a mortgage is not within the legis-lative power except insofar as legislation may provide pro-cedure. Foreclosure is a judicial act invoked by one party to compel the other party to fulfill his mortgage agreement. The judicial act when invoked irrevocably cuts off beyond the possi-bility of recall the mortgagor's rights, including his equity of redemption. Here the mortgagee is not in a position similar to a vendee of property who permits the vendor to remain in possession. Obviously such a vendor would become a tenant within the provisions of the emergency rent control statute. The mortgagor here is holding possession after the delivery of the Referee's deed contrary to his agreement and the law.

It may be well to note that the landlord and tenant relation arises out of agreement, express or implied, by which one enters upon and continues in occupancy of the premises of another for a consideration sufficient to support a contract, which is usually a rental payable in money. The tenant takes an estate in the demised premises and also possession and control in accordance with the agreement. The definitions and classifications of the emergency rent control statutes, in order to carry out their

purpose of preventing the exaction of exorbitant, excessive and oppressive rents, may seem to go beyond the standard definition but the relationship affected in actual practice generally contains those standard elements which with liberal construction establish it to be a landlord-tenant relationship.

The rent control statutes do not protect the former mortgagor owners of the property. They are not tenants and the plaintiff seeking possession need not prove compliance with the requirements of such statutes. '' The courts have repeatedly held that the emergency laws are inapplicable to cases which fall outside the purpose and intent of the statute.'' (*White-Way Arcade* v. *Broadway Turtle King, Inc.,* 273 App. Div. 281, 285.) By the judgment of foreclosure and sale of the property and delivery of the deed, the purchaser has become entitled to possession of the property and the estate of the mortgagor owner. Any rights which the owner had to possession have been cut off. When the defendants' fee ownership of the premises was cut off by the judgment of foreclosure and sale, their right to the use and occupancy was likewise extinguished. (*Steigman* v. *Singer Tobacco & Confectionery Co.,* 72 N. Y. S. 2d 560, affd. 272 App. Div. 1029; *Green Point Sav. Bank* v. *Lefkowitz,* 184 Misc. 716; *Raclawski* v. *Zdaniecka,* 84 N. Y. S. 2d 414; Friedlander & Curreri on New York State Rent Control [1950 ed.], § 37.0, p. 125.) In the *Steigman* case the court said (p. 561): '' The purpose of the state enactment was to protect those who go into possession by agreement, lease or license or permission from another who, or whose successor, might, because of an emergency, unless restrained by law, exact harsh terms for continued possession. Before the sale at foreclosure no rent could be exacted from the owner of the equity in the absence of some agreement with the mortgagee. *Holmes* v. *Gravenhorst,* 263 N. Y. 148, 188 N. E. 285, 91 A. L. R. 1230. After the sale the purchaser thereat could not give notice of an ' emergency rent ' as of the statutory emergency date because the premises were occupied by the owner, presumably not paying rent to itself.'' Furthermore, subdivision 6 of section 1411 of the Civil Practice Act provides: '' In either of the following cases a person who holds over and continues in possession of real property after notice to quit the same has been given, as prescribed in section fourteen hundred and sixteen of this act, and his assigns, tenants or legal representatives may be removed therefrom, as prescribed in this article: * * * 6. Where the property has been sold under a judgment of foreclosure in an action brought against him or a person ·under whom he

claims, and a sale pursuant to the judgment has been completed, and the deed delivered pursuant to such sale has been exhibited to him." The mortgagor owner here cannot suffer a default under its mortgage and then seek to " thwart eviction " by the purchaser at a foreclosure sale " under the protection of the law enacted to protect tenants from oppressive leases." (*White-Way Arcade* v. *Broadway Turtle King, Inc., supra,* p. 286.)

The tenant who went into and continued in possession under the mortgagor is in a different situation. Clearly, he is a tenant within the definition of the emergency rent control law, and by paying the rent required by his agreement and the law is entitled to continue his occupancy. The judgment of foreclosure and sale may have cut off his rights insofar as they are derived from his agreement with his landlord. Coming directly within the provisions of the statute, he would seem to have statutory rights to continued possession. In my opinion, he has such rights and it is unnecessary upon this motion to express a more definite decision of them. It may be noted, nevertheless, that the 1950 amendments to the control laws afford the landlord various options where the tenant has vacated space sublet in whole or in part. The landlord may offer the entire demised space to all subtenants at the emergency rent paid by the tenant when he vacated. If the subtenants or any one of them fails to execute a lease for a period of one year, the landlord may remove the subtenant in a summary proceeding. It is also specifically provided that the final order in such a proceeding shall not be stayed for a period of more than sixty days (L. 1950, chs. 326, 327).

For the foregoing reasons the motion is granted in respect of defendants Cooper and in all other respects denied. Execution is stayed for a period of one month after the service of the order entered hereon. Settle order.